IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 07-00330-01-CR-W-DW |
| ALLEN B. KINNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is a motion to suppress evidence[1] filed by defendant Allen B. Kinney on the ground that police entered his home without a search warrant and without any applicable exception to the search warrant requirement. I find that the exigent circumstances exception to the warrant provided justification for the detectives to enter defendant's residence and perform a security sweep prior to obtaining a warrant, both because they reasonably believed that destruction of evidence was occurring and because they reasonably believed that someone else in the residence may pose a threat to their safety. Therefore, defendant's motion to suppress should be denied.

*I. BACKGROUND*

Around approximately September 20, 2007, a drilling company employee observed marijuana plants ranging from eight to ten feet tall and a hose running from a residence behind Cleveland and

---

[1]The motion is actually missing paragraph 1 and part of paragraph 2 of the alleged factual background.

abutting Highway 435. That information made its way to the police department on September 20, 2007. The following day, two detectives went to the area and walked on a utility easement behind the property and observed the marijuana plants and hose. They contacted uniformed police officers for assistance, and by the time those officers arrived, the plants were gone, marijuana leaves were on the ground between the easement and the residence, and defendant was observed in the back yard sweating profusely. Defendant was detained, and the detectives performed a security sweep of the residence. During the sweep, officers observed a large marijuana growing operation. Defendant was arrested, and the residence was secured pending issuance of a search warrant.

On September 24, 2007, a complaint was filed charging defendant with possessing weapons and ammunition after having been convicted of a felony, possession body armor after having been convicted of a crime of violence, and possession with intent to distribute marijuana. An indictment was returned on October 2, 2007, charging one count of manufacturing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), one count of possessing firearms after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of criminal forfeiture pursuant to 21 U.S.C. § 853. Defendant filed a motion to suppress evidence on October 22, 2007 (document

number 25). On October 24, 2007, the government filed a response in opposition to defendant's motion (document number 27).

On November 6, 2007, I held an evidentiary hearing on defendant's motion to suppress evidence. The government appeared by Assistant United States Attorney Paul Becker. The defendant was present, represented by Donald L. Williams. Detective Yale Acton testified. No exhibits were admitted. I took judicial notice of the search warrant, the affidavit, and the return.

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. Sometime in September 2007, an individual working on a cable crew putting in power lines observed marijuana growing behind a residence with a garden hose going from the residence to the marijuana grow area (Tr. at 4). That information was transmitted to the Mayor's office who then e-mailed the Kansas City police department (Tr. at 4). A major in the police department's narcotics division forwarded the information to Detective Yale Acton on September 21, 2007, and asked him to look into it (Tr. at 3-4).

2. Detective Acton and Detective Donie Hoffman went to the area the morning of September 21, 2007 (Tr. at 4). Cleveland, where it intersects with 104th, dead-ends on the south side of Highway 435 (Tr. at 4). Where Cleveland ends, there is an

3

easement, or a common tract area for the I-435 corridor where power lines are located, where utility vehicles park, and where workers do maintenance on the retaining wall of I-435 (Tr. at 4-5). The easement area is surrounded by a chainlink fence which has an unlocked gate wide enough for a full-sized vehicle to pass through (Tr. at 5). The easement is 75 to 115 feet wide and is bordered on one side by the I-435 retaining wall and on the other side by the chain link fence which is behind the back yards of the residences on 104th Street (Tr. at 5). The fence is about three feet tall and there are a lot of shrubs and other growth around the fence (Tr. at 5). The marijuana plants were all in the easement area, not in any private back yard (Tr. at 26).

    3.    The detectives parked their car by the gate and walked about 100 yards (Tr. at 6). There they observed more than 30 marijuana plants, approximately fifteen of which were eight to ten feet tall (Tr. at 6). The tall plants were in the ground, and smaller marijuana plants were in white planter boxes or planter pots (Tr. at 6). The detectives observed a garden hose going from a residence, the third one down, to this grow area through the fence (Tr. at 6-7). The fence had a gate which allowed access from the back yard to the easement area where the plants were located (Tr. at 26).

    4.    Detective Acton went back to his car and called uniformed officers because he and Detective Hoffman were in plain

4

clothes (Tr. at 7). Detective Acton observed two or three vehicles in defendant's driveway (Tr. at 18).

5. It took about ten minutes for the officers to arrive (Tr. at 7). A couple of officers went to the front of the third residence, determined to be 3730 East 104th Street, and two others went with the detectives to the easement to again confirm that the garden hose ran to the back of that particular residence (Tr. at 7, 8). As they approached the grow area, they saw that the tall marijuana plants were gone (Tr. at 8). Detective Acton observed a man wearing a white shirt running toward the area (Tr. at 8, 17). As the officers got closer, they saw that the garden hose had been removed and several other marijuana plants had been removed from the growing area (Tr. at 8). They observed defendant running, or walking at a very quick pace, in the back yard toward the gate which connects his yard to the public easement where the plants had been (Tr. at 8). There were still some marijuana plants present, but many had been removed (Tr. at 17-18).

6. Detective Acton yelled at defendant to stop (Tr. at 9, 24). He observed that defendant was sweating profusely like he had been working out or exerting a lot of energy (Tr. at 9). Because defendant was running toward where the officers were, Detective Acton drew his weapon and told defendant to get down

5

(Tr. at 9, 24). He observed that defendant's shirt had a lot of dirt and green leafy or grassy debris on it (Tr. at 9).

    7.   Detective Acton saw the yellow garden hose that had been run through the fence to the marijuana plants, only now it was next to the residence (Tr. at 10). The hose had grass and weeds wound up in it and appeared to have been thrown up toward the corner of the house (Tr. at 10, 25). The impression from the hose was still visible in the grass from the house out to where the marijuana plants had been (Tr. at 10). Detective Acton also observed green leafy debris leading from the easement area where the plans had been to the back door of that residence (Tr. at 10).

    8.   Defendant was on the ground in his back yard and the officers were still on the easement when all of this occurred (Tr. at 24-25). Detective Acton went through the gate, which had been closed but unlocked, and into the back yard and detained defendant (Tr. at 10, 27). Because of the dirt and vegetation on defendant's clothing, Detective Acton believed he had been destroying evidence (Tr. at 10).

    9.   The green leafy debris was on the ground from the grow area to the back door of the house (Tr. at 11). The interior door was open, but the screen door was closed (Tr. at 11). There were multiple windows on the back of the house both on the first floor and on the second floor (Tr. at 11). Detective Acton asked

6

defendant if there was anyone else in the house, and defendant refused to answer (Tr. at 11). Detective Acton asked again, and once again defendant refused to respond (Tr. at 11).

    10. Because of the person actively destroying evidence of a crime, the many windows on the back of the house, the open door, the leafy debris leading from the growing area to the back door, and defendant's refusal to indicate whether anyone else was in the house, Detective Acton became concerned that the officers may be shot at (Tr. at 11). He and Detective Hoffman went to the back of the house to conduct a security sweep while uniformed officers stayed with defendant (Tr. at 11-12). The detectives stood at the back door and yelled "Police! Come out!" several times, but no one responded (Tr. at 12). The detectives observed a very strong odor of raw marijuana coming from the house (Tr. at 12, 20). When no one responded to their calls, the detectives entered the house through the back screen door and performed a security sweep for individuals inside the house (Tr. at 12). No one else was located inside the residence (Tr. at 13, 18). It took about five minutes to do the sweep -- the detectives went through the living room, garage, laundry room, basement, and then worked their way upstairs to the bedroom level of the house (Tr. at 12-13). During the sweep search, the detectives observed large quantities of marijuana in plain view in every room (Tr. at 13). They observed dried marijuana bundles hanging from the

7

rafters in the garage and green marijuana bundles lying in the garage which Detective Acton believed to be the plants that had just been removed from the easement (Tr. at 28). The detectives did not observe weapons during the sweep search (Tr. at 23).

    11. The detectives went back outside, and Detective Acton called his supervisor to let them know he would be seeking a search warrant (Tr. at 13).

    12. Sometime mid morning, Detective Hoffman prepared an affidavit and application for search warrant (Tr. at 16). She and Detective Acton went to the office of a state judge; however, they were unable to speak directly with the judge and he merely stated that he was not going to sign the warrant and did not want to speak to the detectives (Tr. at 29). The judge did not give a reason (Tr. at 29). The detectives then edited the affidavit providing more clarification on the access into the easement area, making it clear that the easement can be accessed without going through private property (Tr. at 30). By then the decision had been made to proceed with a federal warrant and the Gang Unit had been put in charge of the scene and the case (Tr. at 30-31). The detectives took the affidavit and application to Judge Sarah Hays in the federal court where the search warrant was issued (Tr. at 30).

    13. During the search, police recovered 170 marijuana plants, two timers, four lighting systems, two plastic trays

8

containing approximately 15 starter plants, a marijuana growers book, a magazine, a box of plastic bags, twelve grams of crack cocaine, eight white pills, two electronic scales, a Glock 9 mm pistol with a magazine containing twelve live ammunition rounds, a Cobra .380 semi-automatic pistol with a magazine containing 30 live ammunition rounds, a .45 caliber magazine containing 13 live ammunition rounds, a bullet-proof vest, a holster, $4,430 in cash, and paperwork in the name of Allen Kinney.

### *III. SWEEP SEARCH*

It is a "'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.'" Groh v. Ramirez, 540 U.S. 551, 559 (2004) (quoting Payton v. New York, 445 U.S. 573, 586 (1980)). However, one exception to the warrant requirement is "exigent circumstances." United States v. Uscanga-Ramirez, 475 F.3d 1024, 1028 (8th Cir. 2007).

The exigent circumstances exception to the warrant requirement justifies immediate police action without obtaining a warrant if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed. United States v. Amburn, 412 F.3d 909, 915 (8th Cir. 2005); United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003), cert. denied, 540 U.S. 1112 (2004). "The analysis of whether this exception to the warrant requirement has been made out is an objective one 'focusing on

9

what a reasonable, experienced police officer would believe.'" <u>United States v. Amburn</u>, 412 F.3d at 915, quoting <u>United States v. Kuenstler</u>, 325 F.3d at 1021, and <u>In re Sealed Case 96-3167</u>, 153 F.3d 759, 766 (D.C. Cir. 1998). The totality of the circumstances test is used. <u>United States v. Amburn</u>, 412 F.3d at 916.

In this case, police observed a large number of marijuana plants which were being watered by a hose connected to defendant's residence. After the detectives left the area and awaited the arrival of uniformed officers, they returned to the grow area and observed that most of the plants had been removed and the hose had been retrieved and thrown up next to the house. The marijuana leaves scattered throughout the path from the grow area to the house along with the dirt and green plant residue on defendant's clothing led police to believe that he had been attempting to destroy at least the crime scene after seeing the detectives walking in that area. Reasonable experienced officers would be justified in believing that other evidence of the marijuana business could be destroyed before a search warrant could be obtained, i.e., records of marijuana transactions. Therefore, I find that the exigent circumstances exception applies in this case because there was a reasonable belief by the officers that evidence was being destroyed.

10

In addition, I find that the exigent circumstances exception applies because there was a reasonable belief among the officers that an accomplice was in the residence who could pose a threat to the safety of the officers. The officers observed two or three cars in the driveway of a house that had a garage. Therefore, it is reasonable to believe that defendant was not the only individual present in the residence. Additionally, the officers observed that of the more than 30 marijuana plants that had been in the easement (many of them eight to ten feet tall), most had been removed during the approximately ten minutes the detectives were at their car awaiting the uniformed officers. It is reasonable to believe that defendant had assistance from an accomplice in moving that many plants in such a short period of time. Therefore, it is reasonable to believe that others involved in the marijuana growing operation were present in the house and could pose a danger to the officers.

## *IV. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in section III, I find that the exigent circumstances exception to the warrant provided justification for the detectives to enter defendant's residence and perform a security sweep prior to obtaining a warrant, both because they reasonably believed that destruction of evidence was occurring and because

11

they reasonably believed that someone else in the residence may pose a threat to their safety.

Based on all of the above, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

                                          /s/ *Robert E. Larsen*
                                          ROBERT E. LARSEN
                                          United States Magistrate Judge

Kansas City, Missouri
November 28, 2007

12

Case 4:07-cr-00330-DW   Document 35   Filed 11/29/07   Page 12 of 12